IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

CHARLES H. BAKER, JR., #216485,       )
                                      )
            Petitioner,               )
                                      )
      v.                              ) CIVIL ACTION NO. 3:02-CV-1328-MHT
                                      )
ARNOLD HOLT, *et al.*,                )
                                      )
            Respondents.              )

## RECOMMENDATION OF THE MAGISTRATE JUDGE ON

## REMAND

### I.  INTRODUCTION

Charles H. Baker, Jr. ["Baker"], a state inmate, filed this 28 U.S.C. § 2254 petition for habeas corpus relief on December 4, 2002, challenging  a murder conviction imposed upon him by the Circuit Court of Tallapoosa County, Alabama, on April 11, 2001.  Pursuant to the terms of a negotiated plea agreement, the trial court sentenced Baker to thirty-three years imprisonment for this conviction.[1]

On June 15, 2005, this court entered a judgment denying Baker's petition for habeas corpus relief.  On April 27, 2006, the Eleventh Circuit Court of Appeals issued a per curiam order remanding one issue raised in the petition for further consideration by this court. Specifically, the appellate court determined that the Alabama Court of Criminal Appeals had

---

[1]The complete and exhaustive procedural history of this case is contained in the Recommendation entered on March 22, 2005 (Court Doc. No. 99).

not deemed Baker's claim challenging the constitutionality of his guilty plea due to the failure of the trial judge to explain his right to plead not guilty by reason of mental disease or defect "procedurally barred [for his failure to raise it in the initial brief on appeal from denial of his first Rule 32 petition], therefore, the district court erred in denying Baker's petition on that ground.  Instead, the district court should determine whether Baker exhausted the claim in state court and, if exhausted, look[] at his claim on the merits."  *Per Curiam Order of the Eleventh Circuit - Court Doc. No. 132* at 7.  In making this determination, the appellate court held that "Baker arguably exhausted his mental defect claim in state court, having fairly presented it to the state trial court, the [Alabama Court of Criminal Appeals], and the Alabama Supreme Court."  *Id*. at 6.  The court likewise noted that "[t]he State concedes Baker raised this issue in his Rule 32 petition, in his reply brief on appeal, and in his petitions for rehearing and for a writ of certiorari."  *Id*. at 5 n.1.

On July 10, 2001, the respondents filed a supplemental answer in which they argue Baker failed to exhaust his challenge to the constitutionality of his plea based on the alleged failure of the trial court to properly advise him of the right to plead not guilty by reason of mental disease or defect because "Baker did not clearly present the argument [in his initial brief on appeal from the denial of his Rule 32 petition] . . . as its own independent ground for why his plea was involuntary.  Instead, he offered it as evidentiary support that his plea was involuntary because he was overmedicated on Elavil and suffered from mental illness."  *Respondents' July 10, 2006 Supplemental Answer - Court Doc. No. 141* at 6.  The

respondents contend that since "Baker's claims from his initial brief were open to multiple reasonable interpretations" and the Alabama Court of Criminal Appeals did not address this precise claim in its opinion Baker failed to fairly present the claim to the Alabama Court of Criminal Appeals. *Id*. at 7. The respondents further argue that Baker is entitled to no relief on the merits of his claim as the record indicates that Baker voluntarily and knowingly entered his guilty plea. *Id*. at 11.

The court provided Baker an opportunity to file a response to the supplemental answer filed by the respondents. Baker filed his response on July 21, 2006 in which he argues that (i) he "did exhaust his claim that 'the trial court failed to properly advise him of the right to plead not guilty by reason of mental disease or defect[,]" (ii) "he did fairly present his claim in his initial appellant brief . . ." and (iii) his "plea was <u>not</u> voluntarily entered" because the trial judge failed to explain the right to plead not guilty by reason of mental defect and determine that Baker understood this right prior to entering his plea. *Petitioner's July 21, 2006 Response - Court Doc. No. 143* at 2-3.

Upon review of the claim for habeas corpus relief now before this court, the July 10, 2006 supplemental answer of the respondents, Baker's response to the supplemental answer and the record in this case, the court concludes that no evidentiary hearing is required and that the petition is due to be denied in accordance with the provisions of Rule 8(a), *Rules Governing Section 2254 Cases in United States District Courts*.

## II.  DISCUSSION

### A.  Exhaustion of Claim

Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" *Duncan v. Henry,* 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. *Duncan, supra,* at 365-366, 115 S.Ct. 887; *O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).

*Baldwin v. Reese*, 541 U.S. 27, 29, 124 S.Ct. 1347, 1349 (2004).  The "exhaustion requirement is . . . grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights.  As we explained in *Rose* [*v. Lundy*, 455 U.S. 509 (1982)]: 'The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings.  *See Braden v. 30th Judicial Circuit Court of Kentucky,* 410 U.S. 484, 490-491 [93 S.Ct. 1123, 1127-1128, 35 L.Ed.2d 443] (1973).'"  *Coleman v. Thompson,* 501 U.S. 722, 731 (1991).  "The purpose of exhaustion is not to create a procedural hurdle on the path to federal habeas court, but to channel claims into an appropriate forum, where meritorious claims may be vindicated and unfounded litigation obviated before resort to federal court."  *Keeney v. Tamayo-Reyes,* 504 U.S. 1, 10 (1992).

4

Upon review of the evidentiary materials filed in this case, the court concludes that Baker fairly presented his challenge to the constitutionality of his guilty plea based on his failure to understand his right to plead not guilty by reason of mental defect in his Rule 32 petition and to the Alabama Court of Criminal Appeals in his initial brief on appeal from the denial of his first Rule 32 petition with accompanying citations to federal case law alerting the state appellate court to the federal nature of the claim.  The court likewise concludes that Baker proceeded on this claim throughout the appeal of his first Rule 32 petition thereby resulting in exhaustion of the claim in state court.  The order of remand issued by the Eleventh Circuit details Baker's actions with respect to his presentation of this claim and supports this court's conclusion:

> In his initial state Rule 32 petition, Baker asserted he never fully understood his right to plead not guilty by reason of mental defect and the trial court erred when it accepted his guilty plea despite its failure to adequately question him as to his understanding of that right.  In his appeal brief to the ACCA [Alabama Court of Criminal Appeals], Baker also asserted
>
>> When the judge asked me about my right to plea not guilty by reason of mental disease or defect, I asked the Judge to repeat his question.... I then asked the Judge to explain that question about this right to me.... Ms. Groff not the Judge said I did not have to plea. *Ala. R.Crim. P. 14.4.*  The Trial Judge must ask the questions and determine that the defendant understands. I was so incoerced [sic] that Ms. Groff not the Judge, started asking the questions.  *U.S. v. Thomas 468 F.2d 422*--Records must show that the Trial Judge personally asked the proper question and received answers from the accused indicating his awareness. *Fed.R.Crim.P. Rule 11 Saddler v. U.S. 531 F.2d 83*--Pointing to the defendant's unresponsive answer to the Court's inquires as warning flags indicating that defendant may not have been competent to plead guilty.

5

Baker then argued the mental defect issue in his reply brief, his petition for rehearing to the ACCA, and his petition for a writ of certiorari to the Alabama Supreme Court.

While *Baldwin v. Reese,* 541 U.S. 27, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004) and *McNair v. Campbell,* 416 F.3d 1291 (11th Cir.2005), *petition for cert. filed,* (U.S. Jan. 10, 2006) (No. 05-8664), address the question of whether a petitioner has fairly presented an issue in federal terms in state court, rather than fairly presented an issue at all, those cases provide some guidance in determining whether Baker sufficiently raised his involuntary plea claims to the ACCA in his initial brief. In *Baldwin,* the Supreme Court stated a litigant may fairly present his claim by "citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds." *Baldwin,* 124 S.Ct. at 1351. Here, Baker both noted the factual basis of his mental defect claim and cited to Rule 11 of the Federal Rules of Criminal Procedure and two cases from this Court, both of which dealt in part with the trial court's duties in accepting a guilty plea. Furthermore, unlike in *McNair,* the citations to federal law are not buried in a string cite, nor is the relevant section of the brief labeled in a confusing manner. *McNair,* 416 F.3d at 1302. Therefore, Baker arguably exhausted his mental defect claim in state court, having fairly presented it to the state trial court, the ACCA, and the Alabama Supreme Court. Because Baker arguably fairly presented his mental defect claim to the ACCA, this Court need not determine whether any future attempt to exhaust state remedies would be futile under Alabama's procedural default doctrine. *See Bailey,* 172 F.3d at 1303.

*Per Curiam Order of the Eleventh Circuit - Court Doc. No. 132* at 5-7. It is clear from the

forgoing that the appellate court determined the fair presentation issue adversely to the

respondents as it specifically held that "Baker . . . fairly presented [his claim that he never

fully understood his right to plead not guilty by reason of mental defect] to the state trial

court, the [Alabama Court of Criminal Appeals], and the Alabama Supreme Court" on appeal

from denial of his first Rule 32 petition. *Id.* at 6. Moreover, contrary to the respondents'

assertion, the state appellate court's failure to address Baker's claim "does not mean the

claim was not presented to it. 'It is too obvious to merit extended discussion that whether

the exhaustion requirement . . . has been satisfied cannot turn upon whether a state appellate court chooses to ignore in its opinion a federal constitutional claim squarely raised in petitioner's brief in the state court . . . .' *Smith v. Digmon,* 434 U.S. 332, 333, 98 S.Ct. 597, 54 L.Ed.2d 582 (1978) (per curiam)." *Dye v. Hofbauer*, ___ U. S. ___, 126 S.Ct. 5, at 6-7, 163 L.Ed.2d 1 (2005).

### B.  Merits of Claim

Baker maintains that he did not knowingly and voluntarily enter his guilty plea because the trial judge failed to adequately explain his right to plead not guilty by reason of mental disease or defect and he therefore did not understand this right prior to entering his guilty plea.  To satisfy the requirements of due process, a guilty plea must be voluntary, intelligent and uncoerced.  *Boykin v. Alabama*, 395 U.S. 238 (1969); *United States v. Moriarity*, 429 F.3d 1012, 1019 (11th Cir. 2005).  "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (citations omitted).  Thus, there is no violation of the Constitution  where a guilty plea results from an intelligent act done with sufficient awareness of the relevant circumstances and likely consequences.  *McMann v. Richardson*, 397 U.S. 759, 766 (1970).

"In order for a guilty plea to be entered knowingly and intelligently, the defendant . . . must be reasonably informed of . . . the legal options and alternatives that are available. *See Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *Gaddy v.*

*Linahan,* 780 F.2d 935 (11th Cir.1986). . . .   Although the defendant must be informed [of his legal options and alternatives], he need not receive this information at the plea hearing itself.  Rather, a guilty plea may be knowingly and intelligently made on the basis of detailed information received on occasions before the plea hearing.  *See Gaddy v. Linahan*, *supra*; *Moore v. Balkcom,* 716 F.2d 1511 (11th Cir.1983), *cert. denied*, 465 U.S. 1084, 104 S.Ct. 1456, 79 L.Ed.2d 773 (1984)."  *LoConte v. Dugger*, 847 F.2d 745, 751 (11th Cir.), *cert. denied*, 488 U.S. 958, 109 S.Ct. 386 (1988); *Campbell v. Marshall*, 769 F.2d 314, 324 (6th Cir. 1985), *cert. denied*, *Campbell v. Morris*, 475 U.S. 1048, 106 S.Ct. 1268 (1986) (guilty plea knowing and voluntary despite trial court's failure to specifically inform petitioner in court that plea would waive various constitutional rights where discussion of waiver of each of these rights was included in a document given to petitioner and petitioner had completed a written response to the court indicating that he had read and understood the information contained in the document); *United States v. Stephens*, 906 F.2d 251, 254 (6th Cir. 1990) (defendant adequately informed of consequences of his guilty plea with respect to range of punishment where plea agreement, advice of counsel and statements of judge provided notice of applicable sentence range).  Moreover, "*Boykin* does not require separate enumeration of each right waived and separate waivers as to each."  *Fontaine v. United States*, 526 F.2d 514, 516 (6th Cir. 1975), *cert. denied*, 424 U.S. 973, 96 S.Ct. 1476 (1976); *Todd v. Lockhart*, 490 F.2d 626, 628, n. 1 (8th Cir. 1974); *United States v. Sherman*, 474 F.2d 303, 305 (9th Cir. 1973); *Stinson v. Turner*, 473 F.2d 913, 915-16 (10th Cir. 1973); *Wade v.*

8

*Coiner*, 468 F.2d 1059 (4th Cir. 1972); *United States v. Frontero*, 452 F.2d 406, 415 (5th Cir. 1971). Thus, a guilty plea is not rendered invalid simply because the trial judge failed to elicit a separate waiver as to each right waived. *Fontaine*, 769 F.2d at 516. "[T]he representations of the defendant, his lawyer, and the prosecutor at [the] plea hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977)

On August 25, 2000, Baker executed a plea of not guilty and waiver of arraignment in which he "enter[ed] a plea of . . . Not Guilty and Not Guilty by Reason of Mental Disease or Defect." *Respondents' Exhibit A* at 9 - *Plea of Not Guilty and Waiver of Arraignment*. Baker certified that his attorney had "explained each and every matter and right set forth" in the plea and that he understood all such matters and rights. *Id*.

Kyla Groff Kelim and Patrick Craddock represented Baker before the trial court on his murder charge. Prior to Baker's entry of his guilty plea, counsel consulted with Baker on several occasions regarding available defenses and the possibility of entering a guilty plea. Counsel repeatedly explained to Baker all of his constitutional rights, including his right to enter a plea of not guilty by reason of mental disease or defect, which Baker did on August 25, 2000, and the waiver of various rights attendant to entry of a guilty plea. *See Respondents' Exhibit E* at 61-67 - *Affidavit of Kyla Groff Kelim* 5-11; *see also Respondents' Exhibit E* at 149-153 - *Affidavit of Patrick C. Craddock*. Ms. Groff addressed Baker's claim challenging the constitutionality of his plea as follows:

9

Mr. Baker's . . . contention, that his lawyers allowed him to plead guilty knowing he was under the influence of a drug, is not true.  Mr. Baker never informed me that he was taking elavil on the morning of the plea.  He did inform me several days prior to the plea that he was being taken off the medication, when we discussed the fact that he needed to understand what was going on when he pled guilty.  At no time, have I ever been informed by any doctor that Mr. Baker was "unstable" nor did he inform me of this.  At the time of the plea, I had no indication from Mr. Baker or from anyone else that he was "overmedicated".  At every visit that I went to at the jail, I . . . spent a great deal of time with Mr. Baker and made sure to inquire about his health.  Most of his complaints centered around the jail conditions and his back problems.  ***The plea [colloquy] clearly shows that Mr. Baker's plea was voluntary, and that he was thoroughly explained his rights, including explanation by me both on the record and off (several times) that he had the right to plead not guilty and persist in that plea and go to trial***.  The [colloquy] reflects that voluntariness.  Mr. Baker was not, by any stretch of the imagination, "incomprehensive" and "incompetent" during his plea.  He was very much lucid.  He was incensed that the state insisted he was drinking heavily during the time leading up to the offense, and responded to this several times on the record and off.  That was his only complaint.  ***Mr. Baker well understood his options, and they were explained to him repeatedly over several hours over several days by me leading up to the plea*** . . . .  He was lucid, he was well aware of his options, he was well aware not only of the sentence to be imposed, but the actual amount of time he would serve, at a minimum, under DOC rules that had recently changed.  ***He was never confused about anything and he was advised repeatedly that his lawyers were more than prepared to go to trial on his behalf if that was what he wanted to do.  He did not***. . . .  [In numerous interviews], he rambled.  That was his normal mode of speaking.  He was appropriately responsive to all requests made by me and was more than able to adequately assist in his defense.  ***He was never incoherent, he was never nonresponsive, he always understood and appreciated the nature of the charge and the range of punishment, as well as the evidence against him and the roles of the various participants in the legal system.  Mr. Baker well understood the nature of the proceedings and what he was doing***. . . .  Mr. Baker did receive a mental evaluation by a competent professional . . . .  That report reveals no mental illness and no basis for further evaluation.  Further allegations that I wanted Mr. Baker to plead guilty more than making sure the guilty plea was voluntarily made is ludicrous. . . .  I explained to my client things I did not believe he understood during the colliquy (sic) because that is what an attorney

should do if their client does not understand something.  I did so again outside of the court's hearing during a recess.  I did so extensively prior to his ever entering a plea.

* * *

. . .  Mr. Baker . . . insists in his petition that he was trying to tell the court why he didn't want to plead after the recess, which is absolutely not what the record reflects and was absolutely untrue.  He didn't want the court to think he had been drinking.  That was his concern, and the concern he wished to voice, which he did, over the advice of counsel.  *At no time did I have any reason to believe that Mr. Baker was not entering his plea voluntarily*. Certainly, Mr. Baker was unhappy about the prospect of spending at least 15 years of his life in prison - and that certainly was the focus of most of our conversations - but that was his main concern.  He never exhibited the slightest hesitation about entering a plea of guilty until the state, in response to his attempt to "justify" the murder, submitted a lengthy rebuttal including the extensive drinking that it alleges he engaged in the night of the murder.  At that time, he indicated he did not want to go forward and only on the grounds that he was mad because the state was lying about his drinking.  *Not only was the defendant "oriented as to time and place" [during the guilty plea] on April 11, 2001, but he also had "sufficient present ability to consult with his attorney" which he exercised several times, and had a clear factual understanding of the proceedings against him - as framed during the proceedings and during the extensive meetings in the days prior to the proceedings*. . . .

. . . [O]n April 9, 2001, the court . . . set the case for trial on April 11, 2001. Both Mr. Craddock and I had already been preparing for trial, and continued preparations.  We both went to the jail on April 9 and [April 10] to discuss the trial with [Baker] and to see how he wanted to proceed.  I spent several hours on the 9th reviewing all of the evidence in the case with him again, as well as the exhibits I anticipated the state would introduce . . .  Mr. Baker reviewed some of the evidence, but could not review the photographs.  We discussed the trial and how it worked in great detail.  *We discussed the possibility of an insanity defense and I told him my opinion was that a court would not find him insane or incompetent and the main reason was his confession, which tracked the injuries inflicted in great and lucid detail.  He denied being under the influence of drugs or alcohol and, as in his confession, had clear recall of the events that exactly matched the autopsy findings.  This was*

*hardly grounds for a viable defense*.  In reviewing the autopsy and [the photographic evidence], we discussed self defense as a possible defense.  The nature of the injuries as well as the testimony simply negated the defense.  The victim exhibited a number of defensive wounds and Mr. Baker exhibited no documented injuries . . . .  He had a history of violence towards the victim as well as towards his exwife.  The autopsy report and photographs showed hundreds of wounds inflicted on the victim.  The photographic evidence, as well as the autopsy, shows a certain amount of "overkill".  This was not consistent with a viable self defense strategy. . . .  We discussed the possibility of a plea, and I very thoroughly explained to him what he was looking at as far as a sentence went in the event of a plea or a guilty verdict, which I did prior to the 9th in great detail as well. . . .  I told him not to give me an answer on that day [with respect to whether he wanted to enter a guilty plea], that we were continuing to prepare for trial, that we would continue to prepare for trial until the day of trial and had been, and would proceed as if we were going to trial.  I went back to see Mr. Baker on April 10, 2001, and he informed me that he was going to enter a plea to 33 years.  *I again explained all of the procedures involved, up through and including an appeal,  . . . I indicated [those rights] he would waive if he pled guilty, and again explained to him his constitutional rights and the trial procedure* . . .

\* \* \*

. . .  Dr. King's [forensic evaluation] report was adequate [and] I did not have grounds to object to the report that were not frivolous. . . .  In my extensive dealings with Mr. Baker, I found him lucid, mentally stable, and able to assist his attorneys in his defense. . . .  I found [Baker] would talk at length to anyone who would listen and tried to do what I could to prevent him from making further statements to incriminate himself, which the court record will reflect were unsuccessful. . . .  *I conducted a more than reasonable, and closer to exhaustive, investigation of the viability of an insanity defense and discussed with Mr. Baker why it was not viable at length*. . . .

\* \* \*

. . .  *I investigated at length the possibility of an insanity defense and found that is was not viable.  Mr. Baker had complete and total recall of the events leading up to and including his murder of the victim.  He related those events clearly and concisely to investigators in the form of a confession*.  Everything he related, other than exaggerated injuries allegedly inflicted upon

him by the victim, closely paralleled the actual injuries as documented in photographs and the autopsy report. He exhibited behavior the day after the murder that clearly evidences consciousness of guilt. He was examined by a competent professional who found that he was competent to stand trial and that he was not insane at the time of the offense. I know of no witness who had relevant testimony regarding his alleged mental illness. His claims regarding his alleged mental illness remain, to this day, unsubstantiated. He has been hospitalized for depression and substance abuse. . . .

. . . ***Mr. Baker voluntarily pled guilty signing both a plea agreement with the State and an "Ireland" form, setting out his constitutional rights as well as the range of punishments and any applicable enhancements. He [entered his guilty plea] after several hours of consultation with his attorneys regarding the plea and sentence. He states that he was waiving all of his rights on the record, after the rights had been explained to him*** . . .

*Respondents' Exhibit E* at 61-67 - *Affidavit of Kyla Groff Kelim* at 5-11 (emphasis added);

*see also Respondents' Exhibit E* at 149-153 - *Affidavit of Patrick C. Craddock.*

On April 11, 2001, Baker entered a guilty plea to murder. Prior to conducting the guilty plea colloquy, the trial court executed an explanation of rights and plea of guilty form in which the court advised Baker of the nature of the charge against him, the range of punishment attendant to this charge, all applicable constitutional rights, including the right to enter a plea of not guilty by reason of mental disease or defect and the right to persist in such plea thereby securing a trial, and the rights waived by entry of a guilty plea. *Respondents' Exhibit A* at 59-60 - *Explanation of Rights and Plea of Guilty* at 1-2. Those provisions of the explanation of rights form relevant to the issue pending before the court state that:

Under the Constitution of the United States and the Constitution and laws of the State of Alabama, you have a right to remain silent and you may

13

not be compelled to give evidence against yourself.  Your attorney cannot disclose any confidential talks he/she has had with you.  You do not have to answer any questions.  If you do answer questions know that you have a right to silence, you will have waived your right.

You have the right to enter or stand on if previously entered, a plea of "Not Guilty" or "Not Guilty by Reason of Mental Disease or Defect," or "Not Guilty and Not Guilty by Reason of Mental Disease or Defect" and have a public trial before a duly selected jury.  The jury would decide your guilt or innocence based upon the evidence presented before them.  If you elect to proceed to trial, you would have the right to be present, you would have the right to have your attorney present to assist you, you would have the right to confront and cross-examine . . . all of State's witnesses, you would have the right to subpoena witnesses to testify on your behalf and to have their attendance in court and their testimony required by the Court, and you would have the right to take the witness stand and to testify but only if you chose to do so, as no one can require you to testify, no one but your attorney will be allowed to comment about that fact to the jury. . . .

If you elect to proceed to trial, you come to court presumed to be innocent.  This presumption of innocence will follow you throughout the trial until the State produces sufficient evidence to convince the jury (or the Court if the trial is non-jury) of your guilty beyond a reasonable doubt.  You have no burden of proof in this case.  If the State fails to meet its burden, you would be found not guilty. . . .   IF YOU PLEAD GUILTY, THERE WILL BE NO TRIAL, YOU WILL BE WAIVING THE RIGHTS OUTLINED ABOVE, EXCEPT YOUR RIGHTS RELATING TO REPRESENTATION BY AN ATTORNEY, THE STATE WILL HAVE NOTHING TO PROVE, AND YOU WILL STAND GUILTY ON YOUR GUILTY PLEA.  YOU WILL, HOWEVER, HAVE THE RIGHT TO APPEAL.

IF YOU HAVE ANY QUESTIONS ABOUT YOUR RIGHTS OR THE CONSEQUENCES OF PLEADING GUILTY, PLEASE LET THE COURT KNOW NOW AND FURTHER EXPLANATION WILL BE MADE.

*Respondents' Exhibit A* at 60 - *Explanation of Rights and Plea of Guilty* at 2.

Baker certified "that [his] attorney . . . read and explained the matters set forth [in the explanation of rights]; that [his] rights [had] been discussed with [him] in detail and fully explained; that [he understood] the charge . . .; that [he understood his] rights, the

14

punishment or punishments provided by law as they may apply to [his] case and . . . the consequences of pleading guilty; that [he was] not under the influence of any drugs, medicines or alcoholic beverages and [had] not been threatened or abused or offered any inducement, reward, or hope of reward to plead guilty. . ." *Id*.  Baker further admitted his guilt to the charge of murder and that he "made up [his] own mind to plead guilty, and that [he] knowingly, intelligently and voluntarily waive[d] [his] right to a trial in this case." *Id*.

The trial court conducted a colloquy with Baker in accordance with the provisions of Rule 14.4, *Alabama Rules of Criminal Procedure*.[2]  The relevant portion of the guilty plea colloquy reads as follows:

> THE COURT:  . . . I have been informed that you [Charles Howard Baker] desire to . . . change your plea of not guilty to a plea of guilty.  Before I accept your guilty plea, it is my duty to inform you of certain constitutional rights which you will waive, or give up, if you plead guilty.  It is also necessary that I determine that you understand the nature of the charge against you; that you understand the consequences of your plea of guilty; that your plea is voluntarily and intelligently made; and that there is a factual basis for your plea.
>
> You have previously been informed by me in writing of all your constitutional rights and you have responded in writing that you have read

---

[2]This rule provides, in pertinent part, that:

"[T]he court shall not accept a plea of guilty without first addressing the defendant personally in the presence of counsel in open court for the purposes of:

"(1) Ascertaining that the defendant has a full understanding of what a plea of guilty means and its consequences, by informing the defendant of and determining that the defendant understands:

"....

"(iv) The fact that the defendant has the right to plead not guilty, not guilty by reason of mental disease or defect, or both not guilty and not guilty by reason of mental disease or defect, and to persist in such a plea if it has already been made, or to plead guilty...."

them, or had them read to you by your attorney, and that you understand those rights.

Now, for your counsel, Ms. Groff and Mr. Craddock, did you go over all the facts of the case with the defendant and thoroughly explain to him his constitutional rights in this case?

MS. GROFF:  Yes.

MR. CRADDOCK:  Yes.

THE COURT:  And, Mr. Baker, did you explain to your lawyers all of the facts of this case and discuss your constitutional rights with them?

THE DEFENDANT:  Yes.

THE COURT:  You are charged in this case with the crime of murder, a class A felony; do you understand the charge?

THE DEFENDANT:  Yes.

THE COURT:  If you plea guilty, or if you are found guilty by a jury, the law provides punishment in the penitentiary of the State of Alabama.  I will explain to you the range of punishments which apply to this case.

For a class A felony -- and, let me go ahead and ask on the record.  Is there any indication of [a] prior felony record on the part of this defendant?

MR. GAVIN [THE PROSECUTOR]:  Not to my knowledge, Your Honor.

MS. GROFF:  No.

THE COURT:  For a class A felony the range of punishment is for not less than ten, no more than ninety-nine years or life, and the Court may also impose a fine of not more than twenty thousand dollars for a class A felony.

Should there be one prior felony conviction, the range of punishment is for not less than fifteen, no more than ninety-nine years or life.

For a class A felony with two prior convictions, . . . the imprisonment term is for life.

And, for a class A felony with three prior felony convictions, the imprisonment term is for life without parole.

Do you understand that if you plead guilty I will set the punishment within the limits prescribed by law and as outlined in the plea agreement

16

which has been signed by you, your attorneys, and the prosecutor?

THE DEFENDANT:  Yes, sir.

* * *

THE COURT:  You have the right to plead not guilty; not guilty by reason of mental disease or defect, or both; and you have the right to persist in such plea if it has already been made.  Do you understand that?

THE DEFENDANT:  Read that once more.

THE COURT:  You have the right to plead not guilty; not guilty by reason of mental disease or defect, or both; and you have the right to persist in such plea if it has already been made.

THE DEFENDANT:  Explain that to me.

MS. GROFF:  It means you don't have to enter a guilty plea.  You can keep pleading not guilty and go to trial.

THE COURT:  Under our law you have the right or privilege against self-incrimination.  That is you have the right to remain silent, and you may not be forced or compelled to give testimony or evidence against yourself.  The burden of proof is on the State to prove beyond a reasonable doubt that you are guilty and the State cannot even comment on your failure to testify.  By pleading guilty you waive and give up the right to remain silent.  Do you give [up that] right?

THE DEFENDANT:  Yes, sir.

THE COURT:  You have the right to a public trial by a jury.  In a jury trial, a jury of twelve persons would determine your guilt or innocence.  By pleading guilty you waive and give up the right to a jury trial..  Do you give [up that] right?

THE DEFENDANT:  Yes, sir.

THE COURT:  You have the right to confront the witnesses against you and have your attorney cross-examine them.  By pleading guilty, you waive and give up the right to confront the witnesses against you.  Do you give [up that]

17

right?

THE DEFENDANT:  Yes, sir.

THE COURT:  You have the right to testify, if you so desire, and present evidence on your behalf.  By pleading guilty, you waive and give up the right to testify and the right to present evidence on your behalf.  Do you waive and give up the right to testify and the right to present evidence?

THE DEFENDANT:  Yes, sir.

THE COURT:  You have the right to have the aid of compulsory process in securing the attendance of witnesses.  That is, you have the right to subpoena witnesses you feel would be necessary for the trial of your case.  If those persons fail to appear after having been subpoenaed, then the Court would issue process whereby those persons would be located and brought before the Court to testify for you at trial.  By pleading guilty you waive and give up the right to have the aid of compulsory process in securing the attendance of witnesses.  Do you give up that right?

THE DEFENDANT:  Yes, sir.

THE COURT:  If I accept your guilty plea there will be no further trial on the issue of your guilt.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Have any promises been made to you, other than those contained in the plea agreement, reached by you[], your attorney, and the prosecutor . . . ?

THE DEFENDANT:  Not that I know of.

THE COURT:  Now, the only promises that have been made to you are contained in this agreement; is that correct?

THE DEFENDANT:  Yes, sir.

THE COURT:  Have there been any threats, force, or coercion used against you in order to get you to plead guilty?

THE DEFENDANT:  No, sir.

THE COURT:  Are you guilty as charged?

THE DEFENDANT:  Yes, sir.

* * *

MS. GROFF:  You had the fight with Windy that night; is that right?

THE DEFENDANT:  Yes.

* * *

MS. GROFF:  You were both fighting that night?

THE DEFENDANT:  Yes.

MS. GROFF:  You were fighting back with her; is that right?

THE DEFENDANT:  After I come out of the bathroom . . ., all I did, once I could get up, was push her away. . . .

MS. GROFF:  At some point the fight stopped; is that right?

THE DEFENDANT:  It had -- I can't remember exactly what all happened.

MS. GROFF:  And, at some point she stopped moving; is that correct?

THE DEFENDANT:  When I really noticed she was not moving was after I come back from being outside . . ., when I turned to come back in, I noticed she was not moving.

MS. GROFF:  And, was this immediately after the fight that you had?

THE DEFENDANT:  Within ten or fifteen minutes, because I stayed outside a few minutes trying to cool off.

* * *

MS. GROFF:  After you finished fighting with her, she stopped moving.  At some point she didn't get back up; is that right?  And, later on you found out she had died from her injuries; is that right?

THE DEFENDANT:  Yes.  I was trying to get her in the bedroom [and] I dropped her . . .  I knew at that point . . . .

MS. GROFF:  You knew at that point she wasn't breathing.

*  *  *

THE COURT:  Anything to be offered from the State?

MR. GAVIN:  Judge, we would submit that the State's evidence would be opposed to the testimony that has been given by Mr. Baker.

THE COURT:  What do the forensics show as being the cause of death?

MR. GAVIN:  It shows strangulation and affixation. . . .

*  *  *

MR. GAVIN:  [In addition to crime scene photographs], [w]e would also offer the forensic report . . . .  And, Judge, I will say that I have been prosecuting for over twenty years and this is the most brutal beating I have ever witnessed or seen in my twenty years of prosecuting.

THE COURT:  Do you concur in the defendant's plea of guilty?

MS. GROFF:  Yes, Your Honor.

MR. CRADDOCK:  Yes sir.

*  *  *

THE COURT:  It is the judgment of the Court that your plea of guilty is intentionally and understandably made, that the plea is voluntary, and that there are facts to support the plea.  I, therefore, allow you to withdraw your plea of not guilty.  I accept your plea of guilty.  I find you are guilty of murder as charged in the indictment.

*Respondents' Exhibit A* at 90-106 - *Guilty Plea Transcript* at 2-18.

20

The record demonstrates that on August 25, 2000 Baker "enter[ed] a plea of . . . Not Guilty and Not Guilty by Reason of Mental Disease or Defect" in which he acknowledged his understanding of the matters and rights set forth in such plea. *Respondents' Exhibit A at 9 - Plea of Not Guilty and Waiver of Arraignment*. The record further establishes that on April 11, 2001 Baker signed an explanation of rights and plea of guilty form in which he certified that he understood his "right to enter or stand on if previously entered, a plea of 'Not Guilty' or 'Not Guilty by Reason of Mental Disease or Defect,' or 'Not Guilty and Not Guilty by Reason of Mental Disease or Defect' and have a public trial before a duly selected jury." *Respondents' Exhibit A at 60 – Explanation of Rights and Plea of Guilty* at 2. Baker likewise acknowledged that he knowingly and voluntarily chose to waive his right to proceed on his plea of not guilty/not guilty by reason of mental disease or defect and enter a guilty plea to murder. *Id*. Additionally, the record demonstrates that during the plea colloquy the court noted Baker had previously been informed in writing by the trial judge of all his constitutional rights, including the right to enter a plea of not guilty by reason of mental disease or defect, and that entry of a guilty plea waived the majority of these rights. *Respondents' Exhibit A at 90 - Guilty Plea Transcript* at 2. The court recounted Baker responded in writing that he understood these rights and the consequences of entering a guilty plea. *Id*. Counsel also acknowledged that they had gone "over all the facts of the case with [Baker] and thoroughly explain[ed] to him his constitutional rights . . ." *Id*. During the plea colloquy with Baker, the trial court specifically advised Baker of his right to plead not guilty by reason of mental disease or defect and the right to persist in such plea if previously

21

entered. *Respondents' Exhibit A* at 93 - *Guilty Plea Transcript* at 5. When Baker sought an explanation of this right, counsel advised that "[i]t means you don't have to enter a guilty plea. You can keep pleading not guilty and go to trial." *Id*. Baker sought no further explanation of this right. After advising Baker of his rights, the trial court ascertained that Baker understood the consequences of his plea and determined that Baker knowingly and voluntarily entered his plea. *Respondents' Exhibit A* at 106 - *Guilty Plea Transcript* at 18.

The evidentiary materials, including the plea of not guilty by reason of mental disease or defect, the explanation of rights and plea of guilty form, the affidavits of counsel, and the guilty plea colloquy establish that: (i) the trial court advised Baker of his right to enter a plea of not guilty by reason of mental disease or defect both in writing prior to entry of the plea and during the plea colloquy; (ii) Baker clearly understood this right as he initially entered a plea of not guilty/not guilty by reason of mental disease or defect; (iii) counsel repeatedly discussed with Baker his constitutional rights, the possibility of proceeding on a defense of mental disease or defect, the lack of credibility and viability of such defense, the option of accepting a guilty plea and the consequences of entering such a plea; and (iv) Baker voluntarily and knowingly chose to waive his right to proceed on his plea of not guilty/not guilty by reason of mental disease or defect and enter a plea of guilty. It is clear from the foregoing that Baker was reasonably informed of the legal options and alternatives available to him as required by *Boykin* and its progeny, and after considering his alternative courses of action, made a knowing and voluntary choice to enter a plea of guilty to murder. The

22

court therefore concludes that Baker knowingly, voluntarily and intelligently entered his guilty plea.

### III.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  To the extent this case is pending on Baker's claim that his guilty plea was not knowing and voluntary because the trial judge failed to explain his right to plead not guilty by reason of mental disease or defect, the petition for habeas corpus relief be denied.

2.  This case be dismissed with prejudice.

It is further

ORDERED that on or before August 10, 2006 the parties may file objections to the Recommendation.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v.*

*Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 28th   day of July, 2006.

/s/ Delores R. Boyd
DELORES R. BOYD
UNITED STATES MAGISTRATE JUDGE